**UNITED STATES of America**

v.

**Donald PATTERSON.**

**Crim. No. HM87–0213.**

United States District Court,
D. Maryland.

Oct. 2, 1987.

Breckenridge L. Willcox, U.S. Atty., and Veronica Clarke, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Leslie Alvin Stein, Phillip M. Sutley and Arcangelo M. Tuminelli, Baltimore, Md., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

Defendant Donald Patterson is charged with possession of cocaine with intent to distribute in violation of Title 21 U.S.C. Section 841(a)(1) and with three counts regarding the possession of firearms. Presently before the court are a number of motions filed by defendant. The government has filed its response to all motions. The court finds that the majority do not require a hearing. Local Rule 6. The court held a hearing on selected motions on September 3, 1987, and is now prepared to rule.

## MOTIONS TO SUPPRESS

*Motion to Suppress Tangible and Derivative Evidence, Paper #13*[1]

On April 14, 1987, a judge of the District Court of Maryland for Baltimore City issued an arrest warrant for defendant and a search warrant for an apartment associated with the defendant. As the police arrived at the apartment complex, they saw defendant exiting the building. They arrested him, and searched both him and his car. The officers then searched the apartment, in which they found more than 500 grams of cocaine, $14,947.00 in cash, and three firearms.

Defendant alleges that each of these three searches was conducted in violation of his Fourth Amendment rights. The court disagrees. The police conducted these searches with arrest and search warrants. The totality of the circumstances as outlined in the application and affidavit for the warrants reveal the requisite probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). Two separate informants both stated that they had observed Patterson with cocaine inside the apartment named in the search warrant. One had purchased cocaine from Patterson in the apartment. The officers saw the defendant leaving the apartment building just before they arrested him. Because the officers lawfully arrested defendant, they could, consistently with the Fourth Amendment, search both him and the passenger compartment of his car incident to that arrest. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973); *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). The court will therefore deny the Motion to Suppress Tangible and Derivative Evidence for all three searches.

1. The paper numbers refer to the docket entry number in the official court file.

*Motion to Suppress Tangible and Derivative Evidence Seized in New Jersey, Paper # 27*

At the hearing, the court heard testimony from Officer Lewis Arce ("Arce") of the New Jersey State Police and United States Customs Agent Abraham Cordero ("Cordero"). Arce stated that on March 9, 1987, a motorist complained to him about defendant's erratic driving on the New Jersey Turnpike. Concerned that defendant might be intoxicated, Arce stopped him. With Patterson were two passengers, Dante Drake and Tony Roberts. Defendant, who had no driver's license with him, gave his name as James Patterson, his age as 21, and his date of birth as April 16, 1961. When one of the passengers reached for the car's registration, the officer noticed a large amount of cash in the glove compartment. The car was registered to Deborah Atkins ("Atkins"). Defendant explained that they were disc jockeys, and that they were heading to New York to buy stereo equipment. Roberts stated that the three intended to buy lighting equipment. Drake stated that they were going to New York to drive around the city. Patterson explained that the car and the money belonged to Atkins, his aunt. Defendant stated that his money was in the trunk. At this point, Arce read defendant his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and requested permission to search the car. He further advised defendant that he could withdraw his consent to the search at any time. Defendant consented, stating that he had nothing to hide. In the car's trunk, the officer discovered cash in excess of $16,000.00, wrapped in small bundles and secured with rubber bands. Because of this money, because of defendant's lack of identification, because of the inconsistency between defendant's stated age and date of birth, because the car did not belong to any of the three men, because they gave conflicting stories about their trip, and because the three seemed nervous, the officer decided to take them to the police station. Another officer, whom Arce contacted by radio, assisted him in transporting the three.

At the station, Arce gave defendant a ticket for driving without a license. He again read the *Miranda* rights to the defendant. Patterson stated that the car belonged to Atkins, whom he identified at this time as his sister. Defendant signed, with the name of James Patterson, a consent form authorizing another search of the car. When confronted with the inconsistency between his date of birth and age, defendant stated that his real name was Donald Patterson. Using this name, he signed a second consent form for the search of the car. Police officers again searched the car, in defendant's presence. Arce checked the serial numbers on some of the bills, and ascertained that they were not stolen from a bank. He then arranged for Cordero to bring a narcotics-detecting dog. While awaiting Cordero, Arce spoke with Atkins, who advised him that Patterson had her permission to use the car. Some time later, Cordero arrived with the dog Honeybee. The dog sniffed the entire car, and reacted positively to the money in the trunk and glove compartment. The money was then confiscated as contraband. Arce released defendant and his passengers without filing charges.

The government wants to introduce evidence of this incident at trial, particularly the following:

1. defendant's use of different names and dates of birth;

2. defendant's use of the car;

3. the money found in the trunk;

4. the ticket defendant received, found in defendant's apartment during the April 14, 1987 search;

5. the reaction of Honeybee to the money; and

6. the receipt for the confiscated money, also found in defendant's apartment.

Defendant moves to exclude all such evidence seized from him or discovered as a result of this encounter with the New Jersey State police. He argues that exclusion is proper because the police and U.S. Customs Agent conducted the warrantless search and seizure in violation of his

Fourth Amendment rights. Alternatively, defendant argues that the court should exclude the evidence pursuant to Fed.R.E. 404(b).

*Fourth Amendment Challenge*

■ Defendant rightly does not contend that Arce's stopping him on the side of the road violated his Fourth Amendment rights. A roadside stop is a seizure analogous to a *Terry* investigative stop, requiring the seizing officer to have an articulable suspicion that the person has committed, is committing, or is about to commit a crime. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *Delaware v. Rouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Arce had a reasonable, articulable suspicion, based on the report from the motorist, that defendant might be driving while intoxicated.

■ Once Arce had stopped defendant to inquire about his driver's license and registration, he noted the money when a passenger opened the glove compartment. The Fourth Amendment does not prohibit the introduction of evidence within the plain view of a police officer. *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983); *Washington v. Chrisman*, 455 U.S. 1, 5–6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982). With regard to the search of the trunk, the court finds, based on the uncontradicted testimony of Arce, that the government has satisfied its burden of proving that the defendant consented to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 248, 93 S.Ct. 2041, 2045, 2059, 36 L.Ed.2d 854 (1973). Arce testified that, when he asked defendant if he could search the trunk, not only did defendant inform him that he had nothing to hide, but he opened the trunk himself. Since Arce found the money in the trunk pursuant to the lawful search, the court finds no constitutional barrier to its admission.

■ The court finds that, from the point in time at which Arce informed defendant that he wanted him to come to the police station, defendant was under arrest. The fact that, according to Arce, he merely detained defendant does not determine the Fourth Amendment inquiry. *Dunaway v. New York*, 442 U.S. 200, 212–216, 99 S.Ct. 2248, 2256–2258, 60 L.Ed.2d 824 (1979); *Davis v. Mississippi*, 394 U.S. 721, 726–7, 89 S.Ct. 1394, 1397–8, 22 L.Ed.2d 676 (1969). The question then becomes whether, given the totality of the circumstances, Arce now had probable cause, rather than only an articulable suspicion, to think that defendant had or was about to commit a crime. *Gates, supra*, 462 U.S. at 238, 103 S.Ct. at 2332. The court finds that, given that defendant did not have his driver's license with him and that the car was not registered to any of the passengers, as well as the existence of the large amount of cash, Arce had the requisite probable cause to seize defendant without a warrant. *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976). Because the government again demonstrated Patterson's consent to search the car while Arce lawfully detained him, the court will not deny, on Fourth Amendment grounds, admissibility of any evidence obtained at that in time.

■ During some point in the 2 to 2½ hours he detained defendant, Arce learned that the owner of the car had given Patterson permission to take the car, and that no bank had reported the bills with those serial numbers as stolen. Defendant argues that at that time, probable cause to keep defendant under arrest vanished. The court agrees. Although Arce's suspicions that defendant might be a narcotics dealer might be reasonable enough to justify a *Terry* stop, no court has ever held that police officers can initiate and maintain station house arrest on less than probable cause. *Dunaway, supra*, 442 U.S. at 216, 99 S.Ct. at 2258; *Florida v. Royer*, 460 U.S. 491, 501–502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (airline passenger taken to an interrogation room after police detained his ticket, luggage and identification was under arrest, requiring officers to have probable cause). Arce was under an

obligation to release defendants as soon as he ascertained that defendant had stolen neither the money nor the car. The court will accordingly exclude any evidence obtained after that point, including the fact that the dog reacted to the money and the existence of the receipt for the confiscated money. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914).

The court finds the government's reliance on *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), misplaced. In that case, the entire encounter between the police and the defendant took place on the side of the road. The court determined that the police did not, under the dictates of *Terry,* unreasonably detain a suspect for 40 minutes when the suspect had hindered the investigative stop by attempting to elude police. The stop did not ripen into an arrest until after the police found the contraband in the vehicle.

For the same reason, the court does not apply the recent case of *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), upon which defendant relies. In this case, the Supreme Court held that, although the standards set in *Terry* applied to an investigative detention of luggage, the officers' holding of the luggage for 90 minutes while awaiting the arrival of a narcotics-detecting dog overstepped the bounds of those standards. The police never detained the defendant in *Place,* only his luggage.

The government also argues that, because defendant consented in writing, the evidence from the search is valid. The court emphasizes that the issue before it is not the validity of the search, but the validity of defendant's detention. While the testimony revealed that defendant consented to the search and also consented to making statements without the presence of an attorney, the record is silent as to whether defendant in fact consented to his

prolonged, warrantless detention. The government has failed to meet its burden of demonstrating the existence, let alone the validity, of such a consent. *Schneckloth, supra,* 412 U.S. at 248, 93 S.Ct. at 2059.

*Fifth Amendment Discussion*

■ Although neither defendant nor the government explicitly raised the Fifth Amendment issue, the government wishes to introduce statements made by the defendant, and defendant challenges their admissibility. The court finds that none of these statements was obtained by Arce in violation of defendant's Fifth Amendment Rights. *Miranda, supra,* 384 U.S. 436, 86 S.Ct. at 1602. First, someone at a roadside traffic stop is not in custody for the purposes of *Miranda. Berkemer, supra,* 468 U.S. at 440, 104 S.Ct. at 3150 (1984). Any statements made by defendant while Arce attempted to ascertain whether he had a driver's license and to whom the car was registered are admissible into evidence without violating defendant's Fifth Amendment rights. Even if defendant was in custody, the uncontradicted testimony was that Arce read defendant his rights as required by *Miranda.* With respect to additional statements made by defendant while he was in custody at the stationhouse, the court finds that Arce again read him his *Miranda* rights a second time at the station house, that defendant did not indicate a lack of understanding, and that he did not request an attorney. The court finds that any statements he made during his detention are admissible under the Fifth Amendment.

*Rule 404(b) Challenge*

■ Defendant argues that even if this evidence passes constitutional muster, the court should not admit it because the government seeks to admit it only to show bad character.[2] The court notes initially its

**2.** Although at the hearing defendant argued this as a ground for his motion, he did not do so in his memorandum. Accordingly, the government did not argue against this in its written response, Paper #31. However, the court has in front of it the government's oral argument at hearing and two other documents in which the government addressed the Rule 404(b) issue: its response, Paper #18, at p. 13, to Defendant's Request for Notice of the Government's Intention to Use Rule 404(b) Evidence at Trial, Paper 17; and its Memorandum in Support of the

disagreement with the government's contention that the events in New Jersey are admissible under the doctrine of *res gestae*. *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980). Defendant is not charged with a conspiracy or continuing criminal enterprise. He is charged with possessing, on or about April 14, 1987, quantities of cocaine with the intent to distribute. The court finds that defendants' actions on March 9, 1987 are extrinsic to the crime with which he is charged.

■ To determine admissibility of evidence under Rule 404(b), the court first asks "whether the evidence is relevant to an issue other than [the defendant's] character (citations omitted). After relevance is determined, the court must consider whether the probative value of the evidence is substantially outweighed by its prejudicial effect. (citations omitted)." *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir.1986). In step one of this inquiry, the court finds, that the evidence the government wishes to present is not being introduced to show bad character on the part of the defendant, but is relevant to his identity. The apartment in which the cocaine was found was rented by a James Patterson, the name that the defendant used at least twice to identify himself to Officer Arce. The police found a substantial amount of cash in the apartment, packaged in a similar way, as well as two driver's licenses issued to Donald Patterson, with two different birth dates. The officers also found the ticket that was issued to defendant that day on the New Jersey Turnpike for driving without a drivers' license. Defendant was arrested driving the same car in which the trooper had stopped him. The court finds that all of this evidence is probative on the issue of identity, which is likely to be at issue in this case. With respect to the money, the court finds that it is probative on the issue of preparation, opportunity, intent, and ability to purchase drugs. Having satisfied the first part of the inquiry, the court moves on to the second. The court reiterates that "prejudicial" does not refer simply to evidence that adversely affects defendant, but only to evidence that is *unfairly* prejudicial. The court finds that none of the evidence presented, including the evidence that the court excludes on Fourth Amendment grounds, is so prejudicial as to warrant exclusion on Rule 404(b) grounds.

*Motion to Suppress Statements, Admissions and Confessions, Paper # 12*

■ Defendant was arrested by the Baltimore City Police. Once defendant was at the police station, he signed a form waiving his *Miranda* rights. *Miranda, supra*, 384 U.S. 436, 86 S.Ct. 1602. He then answered questions regarding the jewelry he was wearing and the bottles of champagne found in the apartment. About two hours later, two agents from the Bureau of Alcohol, Tobacco and Firearms arrived at the police station to question defendant about the weapons found in his apartment. Defendant signed a second waiver of his *Miranda* rights. He told the ATF agents that he did not live in the apartment, that he had stayed there only overnight, and that the guns belonged to the tenant of the apartment. Afterwards, when the Baltimore police began to question him about the drugs, he stated that he did not want to talk about it outside of the presence of his lawyer. At that point, the police officers discontinued their questioning of him until his lawyer arrived. The court finds that, up to the point that defendant requested to see his lawyer before he answered any more questions, he was answering the questions voluntarily and in accord with the dictates of *Miranda*. The court will deny this motion and will admit the statements.

DISCOVERY MOTIONS

*Motion to Produce Informant—Participants, Paper # 6*

■ Defendant moves for an order requiring the government to reveal the names of its informants. The Fourth Circuit Court of Appeals has distinguished active participants in criminal endeavors who could later be witnesses from those

who provide information about the crime or crimes and who are not likely to be witnesses. The court held that the government must disclose only the identities of the former. *McLawhorn v. North Carolina,* 484 F.2d 1, 5 (1973). Because the government states that it used no active participants in this investigation, and that it will not call as witnesses either of the informants who provided information supporting the search warrant, the court will mark this motion as moot.

*Defendant's Request for Notice of the Government's Intention to Use Rule 404(b) Evidence at Trial, Paper #17*

Defendant is not entitled to this information beyond that already provided to him under *Jencks, Brady* and Rule 16. *United States v. Miller,* 520 F.2d 1208, 1211 (9th Cir.1975); *United States v. Barrett,* 539 F.2d 244, 249 (1st Cir.1976). However, in its response to this motion, the government described the Rule 404(b) evidence that it planned to use. Accordingly, the court will mark this motion as moot.

*Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment, Paper #10*

Because the government states that it is not aware of any such promises with regard to its witnesses, the court will mark this motion as moot.

*Motion for Demand for Disclosure, Paper #16*

Defendant moves for the disclosure of electronic surveillance evidence. The government asserts that none was used in this case. The court will mark the motion as moot.

*Motion to Disclose Defendant's Prior Record, Paper #9*

The government states that it has already provided defendant with a copy of his FBI record. Accordingly, the court will mark this motion as moot.

*Motion to Inspect Grand Jury Testimony, Paper #7, and other Discovery Motions, Papers #8, 14, 15*

Defendant's additional motions all request information which the government has agreed to provide. At the hearing, defense counsel advised the court that he had received the discovery that he had requested in these motions. Accordingly, the court will mark defendant's remaining motions as moot.

The court will enter a separate order incorporating its rulings in accordance with the foregoing memorandum.