THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, Appellant, v. ZANE STANLEY MILES, Respondent.

No. 24327

May 25, 1995

895 P.2d 1316

*Frankie Sue Del Papa,* Attorney General and *M. Greg Mullanax,* Deputy Attorney General, Carson City, for Appellant.

*Theodore C. Herrera,* Battle Mountain, for Respondent.

## OPINION

By the Court, STEFFEN, C. J.:

Appellant, the Department of Motor Vehicles and Public Safety (DMV), revoked respondent Zane Stanley Miles' driver's license upon his refusal to secure a physician's answers to a health questionnaire as requested by the DMV. A hearing officer affirmed the revocation, but was reversed by the district court on petition for judicial review. Upon reviewing the DMV's appeal of the district court's order, we conclude that the district court erred and reverse and remand.

### FACTS

On December 10, 1991, Miles appeared at the Sparks Express Office of the DMV to amend the address on his driver's license. As the change was being processed, Miles informed the DMV clerk that he suffered from diabetes and multiple sclerosis.

The clerk later informed her supervisor of Miles' statement regarding the condition of his health, and the supervisor relayed that information to the main office of the DMV in Carson City. The DMV subsequently asked Miles to have his physician com-

plete a medical questionnaire and return it within three weeks. Miles refused to submit the questionnaire to his physician, and the DMV sent a letter of revocation to Miles notifying him that his driver's license was being revoked for failing to secure a response to the questionnaire.

Miles thereafter requested and received an administrative hearing in protest of the revocation. The hearing officer determined that all of the elements of proof necessary to sustain the revocation of Miles' license were supported by substantial evidence and issued a written decision affirming the DMV's decision to revoke.

Miles challenged the hearing officer's decision by petitioning the district court for judicial review. After considering the briefs, the district court issued an order reversing the administrative revocation of Miles' driving privileges on grounds that: (1) the DMV acted with "vindictiveness" toward Miles; (2) the DMV did not request that Miles submit to an "examination" as required by applicable code provisions; and (3) the DMV did not have "good cause to believe" that Miles was unfit to safely operate a motor vehicle. The DMV now appeals the district court's ruling.

## DISCUSSION

This case calls into question the authority of the DMV to require a physician's health report concerning a driver who supplied the DMV with information indicating that he was suffering from a condition that may have impaired his ability to safely operate a vehicle. Miles suggests that the DMV failed to follow the procedural dictates of both the relevant statute and administrative regulation in the process of revoking his license to drive.

NRS 483.480(1) provides:

> 1. The department, having good cause to believe that a licensed driver is incompetent or otherwise not qualified to be licensed, may upon written notice of at least 5 days to the licensee require him to submit to an examination. Upon the conclusion of the examination the department shall take action as may be appropriate and may suspend or revoke the license of the person or permit him to retain the license, or may issue a license subject to restrictions as permitted under NRS 483.360 or restrictions as to the type or class of vehicles that may be driven. Refusal or neglect of the licensee to submit to the examination is grounds for suspension or revocation of his license.

In augmenting the referenced statute, NAC 483.330 supplies the following relevant provisions:

> **483.330 Medical reports required.** A person who has

experienced any of the following physical or medical ailments or any related ailments, and who is applying for or renewing a driver's license or who is requested by the department to obtain a medical examination, must submit a written medical report describing the ailment and its effect on the person's ability to operate a motor vehicle safely:

. . . .

5. Any person who has an established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease which may interfere with his ability to control and operate safely a motor vehicle.

The DMV concludes from the foregoing authority, that when Miles voluntarily disclosed that he suffers from multiple sclerosis, the DMV had good cause to believe that Miles' ability to safely operate a motor vehicle may have been impaired, and that it acted responsibly and well within its statutory and regulatory powers in requesting Miles to secure a medical report from his physician.

The DMV concedes that it did not request a medical "examination" per se, as indicated in NAC 483.330, but insists that the questionnaire was tantamount to a request for an examination, as the purpose was to find out from a knowledgeable physician whether Miles' medical condition interfered with his ability to safely operate an automobile. The DMV argues further that NAC 483.010(3), which defines "good cause to believe" as the existence of "facts sufficient to warrant the belief in a reasonable person that the matter in question is true[,]" supports the request to have Miles' physician complete the questionnaire. The attending clerk, argues the DMV, acted as a reasonable person would have acted under the circumstances.

Referring to the precise language of the provisions cited by the DMV, Miles stresses that he was never required to submit to an examination. The only request made by the DMV was to supply information from his physician in response to a questionnaire. Miles thus concludes that the DMV acted in excess of its authority in the process of revoking his license. Miles also insists that a "good cause to believe" that he suffers from a condition that may impair his driving ability was not established by his admission to the attending clerk. In particular, Miles directs us to NAC 483.300:

**483.300 Sources of information regarding disabilities.**

1. The department has good cause to believe written information *which is notarized* and received from:

(a) Federal, state or local police authorities;

(b) Licensed physicians, psychiatrists, psychologists and optometrists;

(c) The department of human resources;

(d) The state industrial insurance system;

(e) State and private health institutions or health practitioners;

(f) Federal or state courts; or

(g) *Authorized representatives of the department,* or any other information given under oath.

2. Upon receipt of such information, the department will act upon it as if it were true, unless and until sufficient proof is presented to indicate the original information was untruthful.

(Emphasis supplied.) Miles contends that the above provision is exclusive, meaning that the failure of the DMV to require a notarized statement from the knowledgeable clerk to whom Miles made the admissions falls short of satisfying the element of good cause.[1] We disagree. The quoted provision of the code relates to good cause for believing *written information* from sources other than a driver's own admission. In the instant case, Miles himself was the source of the information as he orally revealed his condition to the DMV clerk who obviously had no motive to misrepresent the information she had received from Miles.

The applicable statutes and regulations discussed above are not entirely free of ambiguity as applied to the instant case. It is true that Miles was not asked to submit to a medical examination. However, given the overriding purpose of public safety enlivening the referenced provisions, we conclude that the measures taken by the DMV were both reasonable and within the purview of the statute and regulations. Miles is hardly in a position to complain that the DMV provided an easier route for him to follow by having the physician who was aware of the condition of his health and any limitations associated therewith, merely submit a written report in lieu of a medical examination and a subsequent written report. We therefore conclude that a common sense reading of the applicable statutory and regulatory provi-

---

[1] Miles concedes that if he had appeared at the DMV to apply for or renew his license, notarization of his comments would have been unnecessary, as oral remarks made by a license applicant during the application process are made under *oath* (*see* NRS 483.290(1)(b)) and therefore establish "good cause" under NAC 483.300(1)(g). Oral statements made under other circumstances, however, including the changing of an address, are not made under oath.

sions authorizes the DMV to solicit a physician's response to a questionnaire in lieu of an actual examination.

We note that the applicable rules governing the physical examination of licensees are permissive; the DMV may require an examination supported by good cause but is not compelled to do so. In the context of the department's discretion, it is reasonable to conclude that the DMV has authority to request a less burdensome act short of a complete examination. Moreover, were we to rule otherwise, and accept the proposition urged by Miles, the DMV could simply secure a notarized report from the clerk and then order Miles to submit to a medical examination. The end result, after considerable additional time and expense, would be the same. Either the condition of Miles' health will permit him to drive and control a motor vehicle or it will not.

This interpretation is particularly reasonable in light of the purpose underlying the DMV's authority to request an examination, which is to facilitate a determination of whether a particular licensee is physically or mentally capable of operating a motorized vehicle safely. Whether an actual examination is requested by the DMV is secondary to the ultimate conclusion reached by a physician, who may, pursuant to an established physician-patient relationship, have the relevant facts available without a renewed examination.

Having concluded that requesting Miles to have his physician complete the questionnaire was tantamount to a request for an examination, we must still consider whether the DMV had the prerequisite "good cause to believe" that Miles' ability to drive safely was impaired.

As provided in NAC 483.330(5), any person who has an established medical history or clinical diagnosis of, *inter alia,* a muscular or neuromuscular disease which *may interfere* with his ability to control and operate safely a motor vehicle, who is requested to obtain an examination by the DMV (which we have concluded has been effectually satisfied), must submit a written medical report describing the ailment and its effect on the person's ability to operate a motor vehicle safely. Miles' medical condition was established by his admission, and despite the fact that Miles made no comment on the effect his condition had on his driving ability, it certainly cannot be disputed that multiple sclerosis, in the language of NAC 483.330(5), "may interfere" with his driving. The purpose of the questionnaire sent by the DMV to Miles was to determine if his condition, in fact, inter-

fered with his driving ability. If Miles indeed suffered from a health condition that could endanger his life and the lives of others while operating a vehicle, it was proper and lawful that his driving privileges be curtailed. And, if Miles suffered from no such impairment, he could have readily avoided separating himself from the keys to his automobile by merely having his physician confirm his fitness to drive. The DMV acted in an eminently reasonable manner in requesting Miles' cooperation in providing assurances of his ability to drive under conditions free of disabling physical handicap. Based upon Miles' admission, he "has experienced" one of the ailments identified in NAC 483.330, and that ailment "may interfere" with his ability to control and operate safely a motor vehicle.

We perceive no support for Miles' contention that NAC 483.330 defines an exclusive set of circumstances under which the DMV may proceed with "good cause." Although NAC 483.300 provides that "good cause to believe" by the DMV is established upon receipt of notarized documentation from, among other sources, authorized representatives of the department, the context does not appear to exclude recognition of other reliable sources of good cause. As noted previously, in the instant case, the verbal representation by Miles of his own medical condition is a reliable source for a good cause belief in the need to obtain further information concerning his ability to safely control and operate a vehicle. Where, as here, the department has good cause to seek information concerning a driver's health, the burden shifts to the driver to prove that the precipitating information was untruthful. *See* NAC 483.300(2).[2]

### CONCLUSION

For the foregoing reasons, we conclude that the district court erred in reversing the hearing officer's affirmation of the DMV's revocation of Miles' driver's license. We therefore reverse the district court's order and remand with instructions that the district court reinstate the decision of the hearing officer.[3]

---

[2]A significant portion of the briefs is allocated to a discussion of NAC 483.310, upon which the hearing officer relied in part in affirming the revocation of Miles' license. Miles insists that this provision is inapplicable to the present case because it applies only in the context of license application and not in the context of a change of address. Miles' argument in this regard appears to conform to the plain language of NAC 483.310, but NAC 483.310 does not serve as the basis for our opinion. Where a hearing officer reaches the right decision for the wrong reason, the courts will still affirm it. Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).

[3]It will be recalled that one of the reasons advanced by the district court in support of its decision is that the DMV acted with vindictiveness toward

Young, Shearing and Rose, JJ., concur.

Springer, J., dissenting:

I agree with the trial court. The department did not, as it is required to do, request that Mr. Miles take a medical examination. The department cannot revoke Mr. Miles' license for his failing to do something that he was not properly requested to do. The department has not followed the laws, regulations and procedures that must be adhered to in these kinds of matters; it should not be permitted to make up its own rules as it goes along, just because, as the majority blandly maintains, "[t]he end result . . . would be the same." I would affirm the trial court judgment.

---

Miles. In view of our disposition we need not address this finding. If, in fact, Miles suffers from a medical condition that renders him unsafe as a driver, any aspect of vindictiveness resulting from a confrontation between Miles and the representative of the DMV is not relevant. Moreover, if his condition does not disable him as a driver, he will be able to demonstrate that fact by merely securing the necessary information from his physician and submitting it to the DMV.